# Exhibit C

1

# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(CAMDEN)
- - -

| | |
|---|---|
| MARYANN COTTRELL and : | Civil Docket |
| RICHARD HOLLAND : | No. 08cv-5418 (NLH) |
| Plaintiffs, : | |
| : | |
| vs. : | |
| J&R DISCOUNT LIQUOR : | |
| GALLERY, INC., d/b/a : | |
| J&R LIQUORS; and DAVID : | |
| J. STOUT, JR. : | |
| Defendants. : | |

- - -

West Berlin, New Jersey
Wednesday, August 26, 2009

- - -

Deposition of DAVID J. STROUT, JR.,
taken pursuant to notice, at the law offices of
Friedman Doherty, LLC, 125 North Route 73, West
Berlin, New Jersey, on the above date, beginning at
10:04 a.m., before Donna A. Bittner, RMR-CRR.

- - -

ANDREA SEGAL REPORTING
122 Country Farms Road
Marlton, New Jersey   08053
(856) 596-1763

2

APPEARANCES:

      WESLEY G. HANNA, ESQUIRE
      Friedman Doherty, LLC
        125 North Route 73
      West Berlin, New Jersey  08091

        Counsel for Plaintiffs

      MARK B. SHOEMAKER, ESQUIRE
      Ward Shoemaker LLC
        36 Euclid Street
      Woodbury, New Jersey  08096

        Counsel for Defendants


ALSO PRESENT:


      HARRY E. TROUT


          -  -  -

3

                        I N D E X
WITNESS:                                  PAGE

DAVID J. STROUT, JR.

        By Mr. Hanna ---------------- 4

                    - - -

EXHIBITS          DESCRIPTION            PAGE

D.Strout-1    Letter dated Nov. 3, 2006 - 16

D.Strout-2    Letter dated March 23, 2007 17

D.Strout-3    Copy of photograph -------- 34

D.Strout-4    Diagram ------------------- 34

D.Strout-5    Copy of photograph -------- 72

D.Strout-6    Copy of photograph -------- 73

D.Strout-7    Color copy of photograph -- 77

D.Strout-8    Color copy of photograph -- 77

D.Strout-9    Copy of photograph -------- 79

D.Strout-10   Copy of photograph -------- 82

D.Strout-11   Copy of photograph -------- 84

D.Strout-12   Copy of photograph -------- 87

D.Strout-13   Copy of photograph -------- 92

D.Strout-14   Color copy of photograph -- 95

D.Strout-15   Color copy of photograph -- 97

D.Strout-16   Copy of photograph -------- 100

D.Strout-17   Copy of photograph -------- 101

D.Strout-18   Copy of photograph -------- 103

David J. Strout, Jr.                                    7

1    nature of your question.

2                    MR. HANNA:    Of course.

3                    MR. SHOEMAKER:    I think in fairness

4    if you want him to answer only in one capacity or

5    the other you should try to let him know that's

6    what you want.

7                    MR. HANNA:  Of course.  Is that okay?

8                    THE WITNESS:  Fine.

9    BY MR. HANNA:

10       Q.    Could you describe your involvement with J&D

11    Liquors?

12       A.    I am the president and fifty percent owner.

13       Q.    So if there is upper management, you're upper

14    management with J&D Liquors?

15       A.    Correct, yes.

16       Q.    And how would you describe J&D Liquors'

17    customer base?

18       A.    I don't understand your question.

19       Q.    Well, okay.  Who is your target market?

20       A.    The public, someone that consumes alcohol.

21       Q.    Got you.

22                    Do you have a lot of regulars?

23       A.    Yes.

24       Q.    Okay.  Occasional customers?

David J. Strout, Jr.                16

1    individuals were not there to purchase liquor or

2    lottery tickets or cigarettes?

3        A.   I don't know that.  I don't recall that.

4        Q.   Were any of those people ever banned for life

5    from your premises?

6        A.   For asking to use the telephone?

7        Q.   Yes.

8        A.   No.

9        Q.   How about for asking to use the rest room?

10       A.   No.

11       Q.   I'm going to show you a letter.  I'd like for

12   you to mark this as an exhibit.

13               (Exhibit D. Strout-1 was marked for

14   identification.)

15   BY MR. HANNA:

16       Q.   Do you recognize this letter?

17       A.   Yes.

18       Q.   Did you personally cause this letter to be

19   sent to Richard Holland?

20       A.   Did I personally what?

21       Q.   Cause this to be sent to Mr. Holland?

22       A.   Did I personally send it?

23       Q.   Did you have it personally sent?

24       A.   Yes.

David J. Strout, Jr.                    17

1    Q.    And was it sent on J&D Liquors' behalf?

2    A.    Yes.

3              MR. HANNA:    I'm going to enter

4    another exhibit.

5              (Exhibit D. Strout-2 was marked for

6    identification.)

7    BY MR. HANNA:

8    Q.    Do you recognize that letter?

9    A.    Yes.

10   Q.    Did you personally authorize that letter to

11   be sent?

12   A.    Yes.

13   Q.    And was it sent on J&D Liquors' behalf?

14   A.    Yes.

15   Q.    Is it a fair interpretation of those letters

16   that either Mr. Holland or Miss Cottrell were to

17   enter your premises for any purpose you would call

18   the police and have trespassing charges filed

19   against them?

20   A.    Yes.

21   Q.    Has J&D Liquors ever sent or caused to be

22   sent a letter banning any other person from

23   entering your premises beside Miss Cottrell and

24   Mr. Holland?

David J. Strout, Jr.                    20

1   it?

2       A.    Yes.

3       Q.    Has anyone ever become, to the best of your

4   knowledge, has anyone ever become argumentative or

5   belligerent in your store for any other reason?

6       A.    Not to the best of my knowledge.

7       Q.    Let's cut to the chase.

8                 Could you list to me the reasons why

9   Miss Cottrell was banned from J&D Liquors'

10  premises?

11      A.    Because Miss Cottrell continually entered our

12  lot taking pictures of customers, and they would

13  come in and complain.  She was hampering our

14  ability to please our customers and took me to

15  court, took either I or J&D to court five or six

16  different times, which all were dismissed.

17      Q.    Okay.

18      A.    And five or six of them, I don't know the

19  exact number.

20      Q.    So the first, the first reason why was

21  because she was taking pictures?

22      A.    She was taking pictures of customers that

23  would come in and complain.

24      Q.    To the best of your knowledge, did you ever

David J. Strout, Jr.                    21

1    receive a complaint from one of these customers?

2       A.   Not me personally.

3       Q.   Not you personally.

4               To the best of your knowledge were

5    those individuals parked in handicapped parking

6    spots?

7       A.   I don't know.

8       Q.   And if they were parked in handicapped

9    parking spots would it make a difference?

10      A.   To what?

11      Q.   To whether or not you would have banned them.

12      A.   Based on the information I gave you my

13   reasons why I banned her.

14      Q.   Okay.  So you would have banned her

15   regardless of what her purpose was because she was

16   taking pictures?

17      A.   Well, that's one of the reasons I gave you.

18      Q.   Okay.

19               What was the second reason?

20      A.   The second reason was hampering our ability

21   to satisfy our customers because they would come in

22   feeling very uncomfortable when a stranger is out

23   there taking their pictures.

24      Q.   And the third reason was because?

David J. Strout, Jr.                    22

1     A.   Because on, I'm saying five to six, I don't

2   know the exact number, she's taken me to court or

3   taken my staff to court which has cost me a lot of

4   money and each charge was thrown out.

5     Q.   Why did she take you to court?

6     A.   Municipal court tickets.

7     Q.   Can you think of the first time she took you

8   to court?

9     A.   The first time was for a parking ticket for

10  someone parked in the handicapped zone allegedly.

11    Q.   Allegedly.  And was there any merit to that

12  claim?

13    A.   All I can tell you is that it was dismissed

14  out of court.

15    Q.   Do you have personal knowledge of the facts

16  about that claim?

17    A.   Yeah.

18    Q.   Okay.

19              And was there a car parked in the

20  handicapped parking space?

21    A.   There was a car parked near the handicapped

22  space.  Whether it was over the lines or not, I

23  don't know.

24    Q.   Now let's take a step back.

David J. Strout, Jr.                    23

1          Can you give me the reasons why
2   Mr. Holland was banned from the premises?
3      A.   The same exact reasons as I gave you for
4   Maryann.  He was with her each time basically and
5   although the tickets are signed by her he appeared
6   each time to court with her and at the advice of
7   counsel she was -- he was banned also.
8      Q.   Let's take a step back.  Do you provide your
9   customers with handicapped parking?
10     A.   Yes.
11     Q.   To the best of your knowledge do most liquor
12  stores provide their customers with handicapped
13  parking?
14     A.   Yes.
15     Q.   To the best of your knowledge, do most retail
16  establishments provide their customers with
17  handicapped parking?
18          MR. SHOEMAKER:   Objection to form.
19  You can answer to the best of your ability.
20          THE WITNESS:  I would assume so.
21  BY MR. HANNA:
22     Q.   Why do you assume that?
23     A.   Well, I would assume that there is probably
24  laws requiring handicapped parking spaces in retail

David J. Strout, Jr.                    46

1          THE WITNESS:  I don't know.  Can you

2     repeat the question?

3     BY MR. HANNA:

4      Q.   Do you agree that it is reasonable for a

5     person to conclude that the same law that requires

6     you to place a handicapped parking space in your

7     lot also is violated, not also, is violated when

8     you park your own car in that spot?

9      A.   Yes.

10     Q.   Do you agree that it would be reasonable,

11    whether true or not, but do you agree that it would

12    be reasonable for a person to conclude that it

13    violates the law that requires you to place a

14    handicapped parking space in your lot if you are to

15    park a vehicle in a manner that made it difficult

16    to pull in and out of the parking space without

17    extraordinary effort?

18          MR. SHOEMAKER:   Objection.  Do you

19    understand his question?

20          THE WITNESS:  No.

21          MR. HANNA:   Okay.

22    BY MR. HANNA:

23     Q.   Whether or not their conclusion were true, do

24    you agree that it would be at least reasonable for

David J. Strout, Jr.                    47

1   a person to conclude that the same law that

2   requires you to place a handicapped parking space

3   in your lot also is violated if you park a vehicle

4   in a manner that makes it hard for a person to park

5   a vehicle in a handicapped parking space or pull

6   out of that handicapped parking space without

7   extraordinary effort?

8           MR. SHOEMAKER:   Objection.   You can

9   answer.

10          THE WITNESS:   Yes, I would agree.

11  BY MR. HANNA:

12    Q.   Can you also agree that if the route between

13  the handicapped parking space and the access ramp

14  into your facility is blocked the purpose of the

15  handicapped parking law is undermined?

16          MR. SHOEMAKER:   Objection.   You're

17  asking him for a legal conclusion.

18          MR. HANNA:   Okay.

19  BY MR. HANNA:

20    Q.   You agreed that the purpose of the

21  handicapped parking law was to allow people to

22  enter, handicapped people to enter your store; is

23  that correct?

24    A.   Correct.

David J. Strout, Jr.                54

1          MR. HANNA:   No, I'm not talking about

2     any particular picture.   I'm talking in general.

3     BY MR. HANNA:

4       Q.   Can you agree that if a person walking from

5     the handicapped parking space to the entrance of

6     your store has to walk around a truck to get to the

7     entrance of your store, that the purpose as you

8     understand it of the law that requires you to place

9     handicapped parking in your lot has been

10    undermined?

11         MR. SHOEMAKER:   And that's purely

12    hypothetical?

13         MR. HANNA:   Yes.

14         MR. SHOEMAKER:  You're not telling him

15    that's ever happened, purely hypothetical?

16         MR. HANNA:   Purely hypothetical.

17         THE WITNESS:   Purely hypothetical,

18    yes.

19    BY MR. HANNA:

20      Q.   Have you ever met either Miss Cottrell or

21    Mr. Holland before they sought to enforce

22    handicapped parking laws against you?

23      A.   Mr. Holland was actually a client of mine in

24    my insurance business.

David J. Strout, Jr.                    68

1    Q.   Did you discuss the idea of banning

2   Miss Cottrell with anybody else?

3    A.   No.

4    Q.   So the ultimate decision was ultimately yours

5   to ban Miss Cottrell?

6    A.   Yes.

7    Q.   What factors were considered?

8    A.   The nonpleasure and complaining of our

9   customers of someone strange taking pictures of

10   their vehicles and their cars with kids and

11   whatever else in it, the amount of money I was

12   spending in tickets and legal fees, and the amount

13   of time I was, I had to have my manager off and

14   paying him to go to court.

15    Q.   Just a question.  How many customers had

16   complained?

17    A.   That would be a question for the manager.

18    Q.   What did you perceive to be the benefit of

19   banning Miss Cottrell?

20    A.   Limiting my legal fees, limiting my getting

21   tickets in the mail every other week and, you know,

22   the time I had to pay employees to go to court and

23   also because she wasn't abling me to keep my

24   clients, my customers satisfied.

David J. Strout, Jr.                    70

1    A.   I'm sure this letter was written after.   Can

2    you repeat the question?

3    Q.   When did it first occur to you, and this

4    might not be the same question, but strike the

5    former question to the extent it's not, when did it

6    first occur to you that you might want to ban

7    Mr. Holland?

8    A.   It was based on legal advice.

9    Q.   But do you recall about when?

10   A.   Well, I would recall based on my letter about

11   November of '06, but other than when the letter was

12   written, basically at the same time.

13   Q.   Do you recall how long before you wrote the

14   letter that it first occurred to you that you might

15   ban Mr. Holland from your premises?

16   A.   No.

17   Q.   Do you recall whether or not you decided to

18   ban Mr. Holland from your premises before or after

19   the first hearing that you participated in?

20   A.   After.   I didn't know Mr. Holland or

21   Miss Cottrell until that time.

22   Q.   What factors did you consider in deciding to

23   ban Mr. Holland?

24   A.   Do you want me to repeat the same ones I just

David J. Strout, Jr.                          71

1    told you for Miss Cottrell?

2        Q.   Are they the same considerations?

3        A.   Yes.

4        Q.   Then yes.

5        A.   Okay.

6             He appeared with her in each of the,

7    as far as I know, in each of the instances at the

8    store.  He was with her each time in court and also

9    based on legal advice.

10       Q.   What benefit did you think that you would

11   receive from banning Mr. Holland?

12       A.   I didn't perceive any benefit, that it would

13   stop the harassment of customers and tickets and

14   legal fees and fines.

15       Q.   So is it correct to say that the desire to

16   avoid future tickets, legal fees and fines was a

17   substantial motivation for banning Miss Cottrell?

18       A.   My number one motivation --

19            MR. SHOEMAKER:   Objection to form.  I

20   don't know that he testified he ever avoided fines.

21            MR. HANNA:    That's correct.

22            MR. SHOEMAKER:   That was part of your

23   question.

24   BY MR. HANNA:

David J. Strout, Jr.                    72

1    Q.   I'm going to show you a series of pictures.

2             MR. HANNA:   Please mark this as an

3    exhibit.

4             (Exhibit D. Strout-5 was marked for

5    identification.)

6    BY MR. HANNA:

7    Q.   Is this your parking lot?

8    A.   Yes.

9    Q.   Can you identify all of the signs?  Can you

10   identify all of the areas that are reserved for

11   handicapped parking?  Can you describe them for me?

12   A.   There is a sign right here.  There is a sign

13   right here (indicating).

14   Q.   That's a bad question.  But in this picture

15   do you agree that there are two handicapped parking

16   spaces?

17   A.   That is correct.

18   Q.   Do you also agree that there is an access

19   aisle in between those handicapped parking spaces?

20   A.   That is correct.

21   Q.   Do you also agree that there are two signs

22   marking each of the handicapped parking spaces?

23   A.   Yes.

24   Q.   Okay.

David J. Strout, Jr.                    75

1    lines I don't know.

2    BY MR. HANNA:

3       Q.   Do you recognize that SUV?

4       A.   I have an SUV similar.  Can I tell you that

5    that's it from here?  No.  Can you show me a tag or

6    something?

7                MR. HANNA:   Do you mind if I take a

8    short break?

9                MR. SHOEMAKER:   Not at all.

10               MR. HANNA:   I'm going to take a short

11   break.

12               (Recess; 11:28 a.m.)

13                        - - -

14               (Resumed; 11:33 a.m.)

15   BY MR. HANNA:

16      Q.   Here is a question for you.  Do you recall in

17   terms of when you banned Miss Cottrell from your

18   premises, was it prior to the first time you went

19   to a hearing for one of her tickets?

20      A.   No.

21      Q.   Okay.

22               It was after the first time?

23      A.   I believe so.

24      Q.   Was it after the first time but before the

David J. Strout, Jr.                    78

1    BY MR. HANNA:

2        Q.   Would you agree that this picture depicts the

3    same SUV?

4        A.   Yes.

5        Q.   And this SUV is still parked.  Do you agree

6    that this vehicle appears to be parked inside of a

7    handicapped parking space in this picture?

8        A.   The entire vehicle or part of it?

9        Q.   Part of the vehicle.

10       A.   Part of the vehicle appears to be.

11       Q.   So a reasonable person could conclude that

12   this car was parked within, a portion of this

13   vehicle was parked inside a handicapped parking

14   space; is that correct?

15       A.   Yes.

16       Q.   And you recognize the SUV; right?

17       A.   Correct.

18       Q.   And who owns it?

19       A.   The company owns it.

20       Q.   Oh, okay.

21               Do you deny that these pictures depict

22   your company's car parked in the handicapped

23   parking space on April 10th, 2006?

24       A.   I don't know the date, but I would agree that

David J. Strout, Jr.                    79

1    it appears to be that part of the car is in the

2    handicapped zone.

3       Q.   In the prior picture, I guess we're talking

4    about 6, do you recognize the car that's next to

5    it?

6       A.   I do not.

7                MR. HANNA:    I'd like to enter this as

8    an exhibit.

9                (Exhibit D. Strout-9 was marked for

10   identification.)

11   BY MR. HANNA:

12      Q.   Is this your building?

13      A.   Yes.

14      Q.   Is this one of the entranceways here, the

15   part that's left to the two pillars and to the

16   right of that tree, is that one of the

17   entranceways?

18      A.   It is one of them.

19      Q.   And is that the entranceway that's closest to

20   the handicapped parking spaces?

21      A.   I believe so.

22      Q.   Is this truck making deliveries to your

23   business?

24      A.   Yes.

David J. Strout, Jr.                                    85

1    Q.   And can you tell that this is the same truck

2    because the license plate is the same as in the

3    others?

4    A.   That is correct.

5    Q.   From this picture does it appear as if a

6    person would have to walk around the truck to get

7    to the entrance of your store if they were coming

8    from the handicapped parking spaces?

9    A.   From this picture, yes.

10             MR. SHOEMAKER:   Are you representing

11   to him that all three pictures were taken on the

12   same date at the same approximate time?

13             MR. HANNA:   I am only asking if this

14   picture, and the answer, and my answer is to the

15   best of my knowledge, yes, but --

16             MR. SHOEMAKER:   The reason I'm

17   asking, when you produced them to me there were no

18   time stamps on them like there were some others,

19   but just to authenticate what these are.

20             MR. HANNA:   I understand.   I'm just

21   asking, and this is true of all the pictures I put

22   to you, when I'm asking you a question I'm asking

23   you with regards to the one picture.   I may ask you

24   to identify the truck with reference to another

David J. Strout, Jr.                86

1    picture, but I'm just asking you by looking at this

2    one picture.  Unless I ask you specifically to give

3    me your general impression based upon all the

4    pictures that you've looked at, I'm only asking you

5    based on the one picture.

6    BY MR. HANNA:

7        Q.   Based on that, is there any amendment to your

8    answer that you would want to make?

9        A.   And your question is?

10       Q.   Well, thinking back to when we looked at the

11   last three pictures, I mean you've essentially said

12   that looking at the other two pictures, and correct

13   me if I'm wrong, that you can't tell because of how

14   the picture was taken whether or not a person would

15   have to walk around the truck; is that correct?

16       A.   That is correct.

17       Q.   And I'm not asking you to look at these

18   pictures in combination.  I'm asking you to look at

19   these pictures individually.

20       A.   Okay.

21       Q.   And does your answer stay the same?

22       A.   My answer would be with the number eleven

23   someone in a wheelchair would have to zigzag around

24   the truck.  Someone that would be walking would not

David J. Strout, Jr.                    87

1    necessarily have to zigzag around the truck.

2        Q.   Okay.

3        A.   Because there is an entrance.  There is space

4    over here which would not create them to zigzag.

5    In a wheelchair in this picture I believe they

6    would have to zigzag.

7            MR. HANNA:   Okay.  I'm going to enter

8    another picture.

9            (Exhibit D.Strout-12 was marked for

10   identification.)

11   BY MR. HANNA:

12       Q.   Is that your premises?

13       A.   That is correct.

14       Q.   And are those your handicapped parking

15   spaces?

16       A.   That is correct.

17       Q.   And does that appear to be the same truck?

18       A.   I have no clue from this picture.

19       Q.   I'd like to refer you back to this picture.

20   I don't know which exhibit you have it as.

21           MR. SHOEMAKER:   Strout-9.

22           MR. HANNA:   Strout-9.

23   BY MR. HANNA:

24       Q.   Refer back to Strout-9.

David J. Strout, Jr.                98

1   A.   I truthfully don't know.

2   Q.   I understand.

3   A.   Because I don't know if that's who

4   distributes Miller Light or not.

5   Q.   I understand.

6          From this picture is it inconsistent

7   with the prior truck?

8          MR. SHOEMAKER:   Objection to form.

9   BY MR. HANNA:

10   Q.   From this picture is it feasible that this

11   truck is the same truck as the truck that's

12   depicted in the last picture?

13          MR. SHOEMAKER:   Objection.

14          THE WITNESS:   I don't know.  I can't

15   see the back of it.

16   BY MR. HANNA:

17   Q.   From this picture does this truck appear to

18   be blocking one of the entrances to your store?

19   A.   It appears that if you were in a wheelchair

20   it would be blocking the entrance to the store.  If

21   you were walking you would have entrance to the

22   store.

23   Q.   Okay.

24          Can you tell from the placement of

David J. Strout, Jr.     101

1    Q.   Do they have less room?

2    A.   Yes.

3    Q.   Next to the handicapped parking space do you

4    see, is there another parking space?

5    A.   Are you talking in the picture to the left or

6    to the right?

7    Q.   In the picture that we're looking at, to the

8    right of the handicapped parking space there is

9    another parking space?

10    A.   Yes.

11    Q.   And that parking space, is that a general

12    parking space?

13    A.   I believe so.

14    Q.   So that's not a parking space that's reserved

15    for people with disabilities; is that correct?

16    A.   No.

17          MR. HANNA:   I'm going to enter

18    another picture.

19          (Exhibit D. Strout-17 was marked for

20    identification.)

21    BY MR. HANNA:

22    Q.   Is that your store?

23    A.   Yes.

24    Q.   And does that appear to be the same truck?

### J&D'S DISCOUNT LIQUOR GALLERY, INC.
### 430 NORTH BROAD STREET
### WOODBURY, NJ 08096
### 856-853-9616

RECEIVED
NOV 0 6 2006
BY:_____

November 3, 2006

Richard Holland
31 S. Academy Street
Glassboro, NJ 08028

Dear Mr. Holland:

Please let this letter serve as official notification that you are no longer permitted access to our premises at 430-432 N. Broad Street, Woodbury, NJ 08096.  Your past actions have hampered our ability to properly run our business and have upset many of our customers.

If you are seen on our premises, the Police will be called immediately and we will pursue prosecution for trespassing.

If you have any questions regarding this matter, please contact Christopher C. Cona, Esq., at 856-848-8981.

Sincerely,

David J. Strout, Jr.
Owner

Sent certified return receipt requested and regular USPS mail.
cc:  Christopher C. Cona, Esq.
cc: Reed Merinuk, Chief of Police-Woodbury



EXHIBIT
D.Strout-1
8/26/09 DAB



# Christopher C. Cona, Esq.

*Member of New Jersey & Pennsylvania Bars*
P.O. Box 12
24 South Broad Street
Woodbury, New Jersey 08096
(856) 848-8981

March 23, 2007

Robert Agre, Esquire
4 E. Kings Highway
Haddonfield, NJ 08033

Subject:   *J & D Liquors and Maryann Cottrell*

Dear Mr. Agre:

Pursuant to our Court appearance on March 22, 2007 and our discussions please make sure your client knows that under no circumstances is she allowed on J&D Liquors property. It is my understanding that your client did receive a letter from my client sometime ago that indicated the above.

Thank you for your kind attention to this matter. If there are any questions, please do not hesitate to contact me.

Sincerely,

Christopher C. Cona

CCC/cd

cc:   J & D Liquors; Attn: Dave Trout

C:\WPWIN\Municipal Court\Trout, Harry\J&D ltr to atty agre 3-23-07.doc

EXHIBIT
D. Strout-2
8/26/07 DAB
PENGAD 800-631-6989





EXHIBIT
D.Strout-4
8/26/09 DATG
PENGAD 800-631-6989

















PENGAD 800-631-6989

EXHIBIT
DStrout-12
8/26/09 DMH











