**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|   |   |
|---|---|
| MARYANN COTTRELL and RICHARD HOLLAND, | : <br> : <br> : |
| Plaintiffs, | : Civil Action No. <br> : 08-cv-5418 (NLH)(KMW) <br> : |
| v. | : **OPINION** <br> : |
| J&D DISCOUNT LIQUOR GALLERY, INC., d/b/a J&D LIQUORS, and DAVID J. STROUT, JR., | : <br> : <br> : <br> : |
| Defendants. | : <br> : |

**APPEARANCES**:

Wesley Glenn Hanna, Esquire
Friedman Doherty, L.L.C.
125 North Route 73
West Berlin, N.J. 08091
*Attorney for Plaintiffs Maryann Cottrell and Richard Holland*

Mark B. Shoemaker, Esquire
Ward Shoemaker L.L.C.
36 Euclid Street
P.O. Box 685
Woodbury, N.J. 08096
*Attorney for Defendants J&D Discount Liquor Gallery, Inc., and David J. Strout, Jr.*

**HILLMAN, District Judge**

Plaintiffs, Maryann Cottrell and Richard Holland, claim that defendants, J&D Discount Liquor Gallery, Inc. ("J&D Discount"), doing business as J&D Liquors,[1] and David J. Strout, Jr., the

---

[1] In plaintiffs' original complaint and the Court's Opinion dated April 21, 2009, defendant is referred to as "J&R." Given the representations made in plaintiffs' amended complaint and the

president and co-owner of J&D Discount, violated the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. (or, "ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. (or, "NJLAD").  Defendants have filed a Motion for Summary Judgment against plaintiffs.  Conversely, plaintiffs have filed a Cross-motion for Partial Summary Judgment against defendants.

For the reasons expressed below, defendants' Motion for Summary Judgment is denied.  Further, plaintiff's Cross-motion for Partial Summary Judgment is granted in part and denied in part.

## I.   JURISDICTION

This Court has jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over plaintiffs' related state law claims under 28 U.S.C. § 1367.

## II.  BACKGROUND[2]

Plaintiff Maryann Cottrell is the mother of a severely disabled daughter, and she and plaintiff Richard Holland share the responsibility of her care.  Plaintiffs are advocates for the

---

parties' briefs concerning the present motions, it appears that defendant's name is actually "J&D."

[2] A recitation of the following facts derives, in part, from Cottrell v. J&R Discount Liquor Gallery, Inc., Civil Action No. 08-5418, 2009 U.S. Dist. LEXIS 33676 (D.N.J. Apr. 21, 2009), in which the Court addressed defendants' motions to dismiss and for sanctions.

2

disabled, and they inform local authorities about businesses that fail to maintain handicap accessible parking or fail to discourage unauthorized use of handicap parking spaces and access areas. With regard to defendants, plaintiffs claim that they observed on several occasions vehicles not tagged for handicap parking, specifically a vehicle owned by defendants and several delivery trucks, parked in reserved spaces, access aisles, and/or passenger loading zones, thereby obstructing handicap access to the liquor store. Cottrell filed a citizen's complaint in response to a number of the infractions she observed. Of the five municipal summonses issued to defendants as a result of Cottrell's complaints, the Municipal Court dismissed four of them and there was a finding of not guilty as to the fifth.[3]

Plaintiffs claim that as a result of their enforcement activities, defendants attempted to intimidate them into ceasing their actions. Ultimately, defendants revoked plaintiffs' statuses as business invitees and banned them from accessing the liquor store premises. More specifically, on or around November 3, 2006, David J. Strout, Jr. sent a letter to Holland, informing

---

[3] The citations were for violations of N.J.S.A. 39:4-138(o) (prohibiting the parking of an unauthorized vehicle in a designated handicap parking space) and N.J.S.A. 39:4-207.9 (providing that "[a] person who owns or controls a parking area which is open to the public or to which the public is invited and which contains [designated handicap parking spaces] shall be responsible for assuring that access to these special parking spaces and to curb cuts or other improvements designed to provide accessibility for handicapped persons is not obstructed").

him that he was not welcome on defendants' premises and that any attempt to access the premises will provoke a trespassing complaint with the police. Similarly, on or around March 23, 2007, defendants' counsel sent a letter to Cottrell's counsel notifying her that she, too, was no longer permitted on defendants' premises.

On or around November 3, 2008, plaintiffs commenced this suit against defendants. In response, defendants filed a motion to dismiss and a motion for sanctions against plaintiffs. The Court, in an Opinion dated April 21, 2009, granted defendants' motion to dismiss in part, dismissing plaintiffs' discrimination claims under the ADA and the NJLAD for lack of standing. The Court, however, denied the motion with respect to defendants' arguments against plaintiffs' retaliation claims and also denied the motion for sanctions.

On or around July 24, 2009, plaintiffs filed their amended complaint, again alleging that defendants' conduct violated the ADA and the NJLAD. In particular, plaintiffs allege that when defendants revoked their business invitee statuses and banned them from the liquor store premises, defendants' actions constituted unlawful retaliation for plaintiffs' availment of their rights under the ADA and NJLAD.

Defendants now move for summary judgment against plaintiffs' claims. In turn, plaintiffs cross-move for partial summary

judgment against defendants.

### III. DISCUSSION

#### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp.,

5

477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B. Defendants' Motion for Summary Judgment**

Defendants argue that plaintiffs' ADA claims must be dismissed because plaintiffs did not engage in any activity protected by the ADA.[4] According to defendants, the ADA does not protect an individual who has no intention to patronize a business but, instead, simply enters upon the business' property to ensure compliance with and enforcement of state parking statutes. Further, defendants submit that they did not commit any acts punishable under the ADA. Plaintiffs were not banned from the premises as a means to retaliate against their enforcement of the ADA, say defendants, but rather were banned

---

[4] Because the parties seem to agree -- or, at least, do not dispute -- that the ADA and NJLAD are subject to similar interpretations, as explained further infra, the Court will concentrate its discussion on the ADA claim, unless otherwise noted.

6

because they took photographs of customers' vehicles, spawning customer complaints, and generated needless litigation costs and expenses for defendants.  Moreover, even if defendants allowed an unauthorized vehicle to occupy a handicap parking space or access area, such conduct violates only state parking laws, and not the ADA.[5]

In opposition to defendants' Motion for Summary Judgment, plaintiffs set forth arguments in support of their own Cross-motion for Partial Summary Judgment.  Plaintiffs contend that their actions constitute protected activity under the expansive, anti-retaliation provision of the ADA.  According to plaintiffs, their enforcement activities seek to oppose ADA discriminatory practices, such as misusing or obstructing handicap parking spaces and access areas, and thus fall within that statute's purview.  By their own assessment, the ADA prohibits any barriers or discriminatory policies that may impede a disabled person's access to a place of public accommodation.  As such, plaintiffs opine that defendants not only tolerated but created barriers by enabling non-disabled people to occupy handicap accessible spaces and areas with their vehicles, including defendants' own company truck.  Plaintiffs also emphasize that, regardless of whether

---

[5] Defendants also contend that plaintiffs do not have jobs and file lawsuits in search of pecuniary gain or as a means to generate income.  Additionally, defendants suggest that plaintiffs' activistic conduct and behavior are often aggressive and confrontational.  Plaintiffs dispute those assertions.

defendants acted culpably under the ADA for curtailing handicap access, plaintiffs harbored a good faith and reasonable belief that they were opposing practices unlawful under the ADA, thereby protecting them from any retaliation.

The ADA prohibits retaliation, providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).  The ADA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, . . . or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act."  42 U.S.C. § 12203(b).  "A plaintiff need not be 'disabled' under the ADA to prevail on a retaliation claim."  Stouch v. Twp. of Irvington, 354 F. App'x 660, 667 (3d Cir. 2009) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 n.2 (3d Cir. 2004)).  Nor must the plaintiff be an employee of the defendant.  Cottrell v. Good Wheels, Civil Action No. 08-1738, 2009 U.S. Dist. LEXIS 91317, at *19 (D.N.J. Sept. 28, 2009); see Krouse v. Am. Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997) (explaining that "a plaintiff in an ADA retaliation case need not establish that he is a 'qualified

8

individual with a disability,'" but that "[b]y its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA" (citing 42 U.S.C. § 12203(a)) (emphasis omitted).

To prove a *prima facie* case of retaliation under the ADA, the plaintiff must demonstrate by a preponderance of the evidence that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. See Krouse, 126 F.3d at 500; Cottrell v. Zagami, L.L.C., Civil Action No. 08-3340, 2010 U.S. Dist. LEXIS 63371, at **9-10 (D.N.J. Jun. 23, 2010).

First, the parties contest whether filing a civilian's complaint, alleging the inaccessibility of handicap parking and access areas, constitutes a "protected activity" within the meaning of the ADA. To the extent that defendants argue that plaintiffs' attempted enforcement of handicap parking regulations prohibiting the obstruction of handicap parking spaces and access areas is not a protected activity, this question was already answered, albeit in a different procedural posture, in this Court's Opinion of April 21, 2009. There, the Court concluded that plaintiffs stated a viable cause of action for retaliation under the ADA where they claimed that "they were retaliated against because they filed citizens complaints against defendants

9

for their failure to make accessible handicapped parking for the disabled liquor store patrons." J&R Discount Liquor Gallery, 2009 U.S. Dist. LEXIS 33676, at **16-18.  Other courts in this district have reached the same conclusion.  See Zagami, 2010 U.S. Dist. LEXIS 63371, at *12 (agreeing with other courts in this district that "have found that handicap regulation enforcement, coupled with being banned from premises, were sufficient to state a retaliation claim"); Good Wheels, 2009 U.S. Dist. LEXIS 91317, at *25 (holding that plaintiff engaged in protected activity under the ADA where "he filed a citizen's complaint against [the defendant] for allowing its employees and others to park their vehicles in parking spaces specifically designated for the disabled").  Defendants do not point to any legal authority to rebut this conclusion.

Although state and local parking laws may govern the punishment for parking in handicap spaces or otherwise blocking access for disabled individuals, the ADA also ensures the availability and accessibility of these accommodations.  See, e.g., 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."); § 12182(b)(2)(A)(ii)

10

(providing that disability discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures" when necessary and achievable to benefit disabled individuals); § 12182(b)(2)(A)(iv) (providing that disability discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable"); 28 C.F.R. § 36.304(b)(18) (requiring public accommodations to "remove barriers" and, among other things, "[c]reat[e] designated accessible parking spaces" for disabled persons), § 36.304(c)(1) (stating that the first priority for public accommodations should be to "take measures to provide access to a place of public accommodations from public sidewalks, parking, or public transportation", and that "[t]hese measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces").

While the layout and configuration of defendants' parking lot permitted handicap parking and access and is not in dispute, it is also clear that those parking spaces and access areas were occupied or obstructed at times by the vehicles of non-disabled individuals.[6] Were those handicap accessible spaces and areas

---

[6] During her deposition, Cottrell testified that she issued several complaints against J&D Liquors for the misuse of handicap parking and access areas at its establishment. The first complaint was predicated on defendants' own misuse of the handicap accommodations; the others related to the misuse perpetrated by delivery trucks. Documentation of these complaints are part of the record, along with photographs of the

11

routinely occupied by non-disabled individuals, they would effectively offer no accessibility or accommodation for those people for whom they are intended.  Accordingly, plaintiffs partake in a protected activity by opposing the inaccessibility of handicap parking spaces and access areas through legal means.[7]

Second, the parties debate whether defendants engaged in any actions deemed unlawful under the ADA.  Defendants' alleged indifference toward, and affirmative interference with, the accessibility of their handicap parking spaces and access areas is a direct corollary to plaintiffs' protected activity.  The ADA

---

infractions.  As part of his deposition testimony, Strout acknowledged that the photographs depicted a company-owned vehicle parked partially inside a handicap space and delivery trucks partially obstructing the entranceway closest to the handicap parking spaces.  Though four of these complaints were eventually dismissed and the fifth resulted in a finding of not guilty, plaintiffs reasonably, and in good faith, believed that defendants' actions violated the ADA and handicap parking laws. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996) (explaining that "protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct" under Title VII); see also Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (noting that the same legal standards generally inform both the ADA and Title VII).  As explained infra, the issue is not whether the defendants were ultimately found guilty of obstructing the spaces.  Rather the issue is whether plaintiffs had a reasonable, subjective and objective belief that they had violated a protection afforded by the ADA.  Therefore, the outcome of those complaints do not alter the analysis or findings of this Court.

[7]Alternatively, even if the unlawful use of, or inability to curb the unlawful use of, handicap parking and access areas does not violate the ADA, plaintiffs reasonably, and in good faith, believed that defendants' actions contravened the ADA.  See Aman, 85 F.3d at 1085.

guarantees handicapped individuals access to public accommodations. An infringement upon that access -- though, perhaps, not architectural or structural in nature -- may, in essence, constitute a barrier to the special accommodations that the ADA extends to the disabled. Accordingly, defendants' purported disregard for the ADA's protections may be evinced by a failure to curb unlawful parking in their handicap spaces and access areas or, more pointedly, by the occupation of those same handicap spaces and areas by defendants' own company vehicle and delivery trucks servicing J&D Liquors. However, whether defendants' conduct actually contravened the ADA or any other law is not dispositive; rather, defendants' alleged retaliation for plaintiffs' actions is what remains at the center of this case. Because plaintiffs have the right to oppose inaccessible handicap accommodations, defendants' ban against plaintiffs' presence on their premises due to their opposition may violate the ADA's anti-retaliation provision.

Further, defendants also advance the same arguments against plaintiffs' NJLAD claim of retaliation. N.J.S.A. 10:5-12 of the NJLAD reads, in pertinent part:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> . . . .
>
> d. For any person to take reprisals against any person because that person has

> opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

Like the ADA, the NJLAD also proscribes any disability discrimination concerning public accommodations. N.J.S.A. 10:5-12(f). Further, courts have held that the same legal standards govern the ADA and NJLAD. See Abramson v. William Paterson College of N.J., 260 F.3d 265, 286 (3d Cir. 2001); Lawrence v. Nat'l Westminster Bank New Jersey, 98 F.3d 61, 70 (3d Cir. 1996). Neither party challenges this proposition. For that reason, plaintiffs' NJLAD claim, same as its ADA claim, must survive defendants' motion. See Estate of Nicholas v. Ocean Plaza Condominium Assoc., Inc., 909 A.2d 1144 (N.J. App. Div. 2006) (holding that violations of administrative regulations concerning disability accommodations may evince a NJLAD cause of action for disability discrimination).

Therefore, because plaintiffs may advance their retaliation claims under the ADA and NJLAD, defendants' Motion for Summary Judgment is denied.[8]

---

[8] The Court is not unsympathetic to small business owners who may have failed to guarantee the integrity and availability of their handicap parking spaces, but are ultimately vindicated of

14

**C.   Plaintiffs' Cross-motion for Partial Summary Judgment**

Having denied defendants' Motion for Summary Judgment, the Court must now consider whether plaintiffs are entitled to summary judgment on their claims.  Again, plaintiffs allege that they were banned from defendants' premises because they documented and reported the misuse of defendants' handicap parking spaces and areas by unauthorized vehicles, including delivery trucks and defendants' own company truck.  In support of their action, plaintiffs present Strout's deposition testimony in which he supposedly admits that he banned plaintiffs on account of their activistic conduct and its consequences to his business.  Defendants counter that they banned plaintiffs from the premises for several reasons, including the harassment of their patrons, the disruption to their business, and the litigation expenses

---

any alleged ADA violations.  Having to defend against parking complaints and civil rights claims may prove financially burdensome for businesses and distract from their normative operations.  Nevertheless, if the result in this case seems unduly harsh to such businesses and their owners, they have available remedies: remain ADA compliant, defend themselves in municipal and other proceedings against alleged infractions, and avoid retaliatory conduct.  In those cases where ADA allegations are objectively unfounded, brought in bad faith, or cause tortious harm by unlawfully impacting or impairing legitimate business activities, additional remedies may be available.  However, as presently written, the statute and its implementing regulations do not have a "I wasn't found guilty" defense or a "It only happened a few times" defense to an otherwise valid complaint brought in subjective and objective good faith that an ADA violation had occurred.  It is for legislative bodies, and not this Court, to create "actually innocent" and "de minimis violation" defenses to the expansive anti-retaliation provisions of the ADA and the NJLAD.

that they incurred as a result of plaintiffs' complaints to police.

Plaintiffs correctly opine that Strout's deposition testimony demonstrates that they were banned from the premises, in large part, because of their activistic conduct and its consequences. When asked why he banned Cottrell from the premises, Strout replied,

> Because Miss Cottrell continually entered our lot taking pictures of customers, and they would come in and complain. She was hampering our ability to please our customers and took me to court, took either I or J&D to court five or six different times, which all were dismissed.

Strout also confirmed that he banned Holland from the premises for the same reasons. Later, plaintiffs' counsel inquired: "So is it correct to say that the desire to avoid future tickets, legal fees and fines was a substantial motivation for banning Miss Cottrell?" Strout responded, "My number one motivation . . . ."[9]

Defendants may have barred plaintiffs from the premises, in part, because of customers' frustration and anger toward having their vehicles and themselves photographed or otherwise recorded.

---

[9] In response to an inquiry about the benefit of banning Cottrell from the premises, Strout enumerated the following "benefits": "Limiting my legal fees, limiting my getting tickets in the mail every other week and, you know, the time I had to pay employees to go to court and also because she wasn't abling [sic] me to keep my clients, my customers satisfied."

16

But, as is made clear in Strout's testimony, defendants also revoked plaintiffs' business invitee statuses on account of plaintiffs' reports and documentation of handicap parking and access violations, and the litigation and legal expenses generated therefrom. Thus, based on the record, it is uncontroverted that, at least in part, defendants' ban against plaintiffs constituted retaliation against their efforts to ensure access and accommodations for disabled people.

That being said, plaintiffs argue that they should prevail under the mixed-motives theory, given that defendants admit that one of their motivations for banning plaintiffs was plaintiffs' enforcement activities. Although defendants do not challenge the applicability of the mixed-motives analysis in this case, courts disagree on the propriety of employing such a burden-shifting analysis to an ADA cause of action, especially in light of Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343 (2008). See, e.g., Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 962 (7th Cir. 2010) (holding that ADA requires "but-for causation" and that "proof of mixed motives will not suffice"); McLeod v. Parsons Corp., 73 F. App'x 846, 858 (6th Cir. 2003) (acknowledging the circuit split between those circuits that do and do not permit ADA claims under the mixed-motives analysis, and holding that plaintiff could not proceed under mixed-motives analysis); Warshaw v. Concentra Health Servs., 2010 U.S. Dist.

17

LEXIS 59081, at **41-42 (E.D. Pa. Jun. 14, 2010) (noting that the question whether mixed-motives analysis is applicable to ADA claims is "an open one in [the Third Circuit]," and concluding that it is not applicable); Weirich v. Horst Realty Co., 2009 U.S. Dist. LEXIS 24526, at *11 (E.D. Pa. Mar. 26, 2009) (stating that in an ADA action, either the McDonnell-Douglas framework or the mixed-motives analysis may apply).

As the Court noted supra, plaintiffs' enforcement activities and its consequences certainly impacted defendants' decision to ban them from the liquor store premises. However, the Court cannot conclude definitively that no other reason would have compelled the same reaction and outcome. For example, Strout testified at his deposition that Cottrell's complaints motivated his decision to ban her, but added, "No, [the complaints were] not my sole motivation."

Should the burden-shifting, mixed-motives analysis not apply to the present action, plaintiffs would bear the burden to show that their enforcement activities were the "'but for'" cause of, or the "determinative influence" in, defendants' decision to ban them. Kelly v. Moser, Patterson & Sheridan, L.L.P., 348 F. App'x 746, 749 (3d Cir. 2009) (explaining the applicable legal standards in an ADEA case). In other words, plaintiffs could only succeed on their claim if they could demonstrate that they would not have been banned from the premises for any other reason

than their enforcement activities.  See id. at 749 n.7.  Under this analysis, plaintiffs would carry the burden of persuasion throughout the proceedings, and a genuine issue of material fact may arise before the Court can find in plaintiffs' favor.

Therefore, the Court asks that the parties brief the issue whether the burden-shifting, mixed-motives theory remains applicable to retaliation claims under the ADA and NJLAD or whether a different analysis must apply.  In addition, the parties are encouraged to argue whether, in light of this Opinion, plaintiffs are entitled to summary judgment on their ADA and NJLAD claims in the event that the burden-shifting, mixed-motives theory is or is not available to them.[10]

Because the Court does not find at this time that plaintiffs must prevail on the merits of their ADA and NJLAD claims -- and because a genuine issue of material fact may or may not exist, depending on the appropriate legal standards and burdens of persuasion to apply in this matter -- plaintiffs' Cross-motion for Summary Judgment is denied in part, without prejudice.  However, the Court grants plaintiffs twenty (20) days from the date of this Opinion to renew their motion and submit a brief in further support of it.  Defendants will have twenty (20) days

---

[10] In the event that plaintiffs may ultimately be awarded summary judgment on their claims, defendants may also wish to address in their brief plaintiffs' demand that they disclose financial information in anticipation of possible punitive damages.

from plaintiffs' submission to submit their response. The Court will revisit this ruling upon submission of the parties' briefs.

**IV. CONCLUSION**

    For the foregoing reasons, defendants' Motion for Summary Judgment is denied. Further, plaintiffs' Cross-motion for Partial Summary Judgment is granted in part and denied in part. Plaintiffs will have twenty (20) days from the date of this Opinion to submit a brief addressing the aforementioned issues. Defendants will have twenty (20) days from the date of plaintiffs' submission to file their response. An Order consistent with this Opinion will be entered.

```
Dated: September 30, 2010            /s/ NOEL L. HILLMAN
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.
```